**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

STERMAN DOUGLAS RATLIFF,

               Plaintiff,

v.                                 CIVIL ACTION NO.   2:13-cv-32917

J.S. SHACKELFORD, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**
(*Defendants' Motion for Summary Judgment* **and**
*Plaintiff's Motion for Partial Summary Judgment*)

Pending before the court is the defendants' Motion for Summary Judgment [Docket 27] and the plaintiff's Motion for Partial Summary Judgment [Docket 29]. The parties have filed responses and replies, and the motions are ripe for review.

For the reasons explained below, the defendants' Motion for Summary Judgment [Docket 27] is **GRANTED in part**, as to the federal § 1983 claims against the Kanawha County Sheriff's Department and the Kanawha County Commission, and **DENIED in part**, as to all other claims. The plaintiff's Motion for Partial Summary Judgment [Docket 29] is **DENIED**.

**I. Defendants' Motion for Summary Judgment [Docket 27]**

    **A. Introduction**

The facts are set forth in the light most favorable to the plaintiff. This is a simple case. A blind, partially deaf United States veteran suffered a disability due to the negligence of a Huntington Veteran Affairs Medical Center ("VA"). When he lawfully expressed his

dissatisfaction to the VA, the facility did not attempt a compassionate response. It dispatched a law enforcement officer under the guise of a "well being check." Mr. Ratliff peacefully asked the officer to leave. The opposite occurred. The officer snuck past him into his home and then physically assaulted and injured him. He then marched him off to jail and kept him handcuffed for hours. The details are set forth below.

### B. Background

Mr. Ratliff served in the United States Marines in Vietnam. He was blinded as a result of fighting for his country. Although he is affected with post-traumatic stress disorder, he is a longtime advocate for veterans' rights. In October of 2011, he noticed severe pain in his right ear. Congress having provided lifetime, free, quality healthcare for those who served their country, Mr. Ratliff visited the VA. He was misdiagnosed over and over again by three doctors in the eight months that followed. The first doctor treated him with eight different antibiotics. The second doctor said he was fine. The third doctor informed him that he had cancer.

In desperation, he traveled to Ohio State University, where he was correctly diagnosed. The eighth months of botched care at the VA, however, left him permanently injured. He suffered partial deafness.

Mr. Ratliff repeatedly protested his poor care and treatment to the VA. On April 18, 2013 in particular, Mr. Ratliff placed numerous calls to the VA Medical Center that had harmed him. He candidly admits he was rude. Instead of working with him compassionately through social workers, the VA dispatched the police to his home. Kanawha County Deputy Sheriff J.S. Shackelford arrived at his home at 10:00 p.m. Deputy Shackelford knew that Mr. Ratliff was blind.

Mr. Ratliff lives on a twenty acre parcel. Deputy Shackelford made it over the curtilage and found Mr. Ratliff sitting in his yard. Mr. Ratliff asked the deputy if he had a warrant. Deputy Shackelford admitted that he did not. Deputy Shackelford said he did not intend to file charges. Mr. Ratliff told the deputy to leave.

This should have ended the encounter. Instead, Deputy Shackelford secretly proceeded to the front door. Deputy Shackelford testified that he "didn't care that [Mr. Ratliff] told [him] to leave." (Shackelford Dep. [Docket 32-2], at 164:17-19 (deputy agreeing with this statement)).

While the deputy and Ms. Ratliff were talking in the home at least five feet from the doorway, Mr. Ratliff stood on the porch below two steps, opened the storm door, and asked whether Deputy Shackelford was inside. The deputy was silent, until Ms. Ratliff told him to respond. Now knowing that the deputy remained on his property, Mr. Ratliff again told Deputy Shackelford to leave. Deputy Shackelford instead lunged toward Mr. Ratliff and forcibly handcuffed one of his wrists. Mr. Ratliff began "flailing" because he "had no idea. [He] didn't even know [the deputy] was coming." (Ratliff Dep. [Docket 32-1], at 45:20-46:2). Ms. Ratliff says Deputy Shackelford "stormed over the five feet from the living room to the doorway, down the steps to the front door, spun [the blind Mr. Ratliff] around, and handcuffed one of his wrists." (Affidavit of Linda Ratliff [Docket 32-3], at 3). A struggle ensued, with Deputy Shackelford tackling Mr. Ratliff and fully handcuffing him. Mr. Ratliff's mouth was cut on the porch, and he sustained cuts to his arms and legs during the assault. The injuries were severe enough that Deputy Shackelford called an ambulance. After the EMT arrived, however, Mr. Ratliff refused treatment. The deputy shackled Mr. Ratliff's feet in his police cruiser, and Mr. Ratliff was transported, not to the hospital, but just into custody for the night. Deputy Shackelford roughly led Mr. Ratliff to his

3

cell and tripped him in route. Once inside a cell, Mr. Ratliff's hands remained handcuffed behind his back for no less than four hours. He was released the next day. The charges for obstructing an officer and public intoxication were ultimately dismissed.

Mr. Ratliff instituted this action against Deputy Shackelford, the Kanawha County Sheriff's Department, and the Kanawha County Commission for: (1) Use of excessive force under 42 U.S.C. § 1983; (2) false arrest under 42 U.S.C. § 1983; (3) use of excessive force and false arrest in violation of the West Virginia State Constitution, Article III, Sections 1, 5, 6, and 10; (4) battery; and (5) negligence. The defendants move for summary judgment on all claims.

**B. Standard of Review**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

4

The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### C. Discussion

First, Deputy Shackelford seeks qualified immunity on the § 1983 claims. Second, all three defendants seek immunity on the state constitutional claims. Third, all defendants assert that Deputy Shackelford's use of force was reasonable and that there is no genuine issue of material fact on either the negligence or battery claims.

Genuine issues of material fact exist on all claims. The sole issue remaining before the court is whether the defendants enjoy immunity under § 1983 or under West Virginia law.

### i. Qualified Immunity as to Deputy Shackelford on § 1983 Claims

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and internal quotations omitted).

There is a two-step process "for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, "the court must [then] decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citations omitted). If the court answers both prongs in the affirmative, then qualified immunity does not apply. *Id.* ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."). In *Pearson*, the Supreme Court "conclude[d] that, while the sequence . . . is often appropriate, it should no longer be

regarded as mandatory." *Id.* at 236.

    *a. Excessive Force*

    1.  <u>First Prong</u>

The facts that Mr. Ratliff has shown plausibly "make out a violation of a constitutional

right." *Id.* at 232. The United States Supreme Court has explained:

> In *Graham*, we held that claims of excessive force in the context of arrests or
> investigatory stops should be analyzed under the Fourth Amendment's "objective
> reasonableness standard," not under substantive due process principles. [*Graham
> v. Connor*, 490 U.S. 386, 388, 394 (1989)]. . . . *Graham* sets forth a list of factors
> relevant to the merits of the constitutional excessive force claim, "requir[ing]
> careful attention to the facts and circumstances of each particular case, including
> the severity of the crime at issue, whether the suspect poses an immediate threat
> to the safety of the officers or others, and whether he is actively resisting arrest or
> attempting to evade arrest by flight." *Id.* at 396, 109 S. Ct. 1865. If an officer
> reasonably, but mistakenly, believed that a suspect was likely to fight back, for
> instance, the officer would be justified in using more force than in fact was
> needed.

*Saucier*, 533 U.S. at 205-06.

On April 18th, Deputy Shackelford ignored Mr. Ratliff's request for him to leave the

residence. He surreptitiously invaded the home and, after being confronted by Mr. Ratliff, he

physically assaulted and injured the blind and partially deaf veteran on trumped up charges. He

took Mr. Ratliff straight to jail and left him in cuffs for longer than necessary for any legitimate

law enforcement purpose.

First, the "crime at issue" was nonexistent. *See id.* at 205. Mr. Ratliff was innocent of any

offense. Assuming otherwise, the severity of Mr. Ratliff's actions of placing phone calls to the VA

is minimal. Additionally, Mr. Ratliff did not "pose[ ] an immediate threat to the safety of" Deputy

Shackelford and any belief otherwise was objectively unreasonable. *See id.* The deputy was totally

unjustified in lunging after Mr. Ratliff, taking him to the ground, cuffing him, treating him harshly

in taking him to jail, and leaving him cuffed for hours. In short, an objectively reasonable officer in Deputy Shackelford's position would not have behaved in this manner. *See Pearson*, 555 U.S. at 232.

    2.  <u>Second Prong</u>

It is also the case that "the law [must be] clearly established that the officer's conduct was unlawful in the circumstances of the case." *Saucier*, 533 U.S. at 201. It is clear that an officer must take into consideration an individual's known personal characteristics—including an individual's physical or mental disabilities—in using force. As a result, any reasonable officer in Deputy Shackelford's circumstances would know that lunging at and forcibly handcuffing a blind man standing over five feet away is unlawful. "Looking to the proportionality of the force used in light of all the circumstances, and again taking [Mr. Ratliff's] version of events as true, the objective unreasonableness, and indeed the unlawfulness and excess, of [Deputy Shackelford's] conduct should have been apparent to a reasonable law enforcement official under the law existing at the time." *McDerment v. Browning*, 18 F. Supp. 2d 622, 627 (S.D. W. Va. 1998) (Haden, J.). I **FIND** that the second prong is met.

Having answered both prongs of *Saucier* affirmatively, I **FIND** that Deputy Shackelford is not entitled to qualified immunity on Mr. Ratliff's § 1983 claim for use of excessive force. *Pearson*, 555 U.S. at 232 ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."). Thus, I **DENY** the defendants' summary judgment motion with respect to this point.

    *b. False Arrest*

The defendants also argue that Deputy Shackelford is immune from Mr. Ratliff's § 1983

7

false arrest claim. Mr. Ratliff was charged with obstructing an officer and public intoxication. Although both charges were eventually dismissed, the Kanawha County Magistrate Judge found after the incident that probable cause existed for Mr. Ratliff's arrest. Deputy Shackelford admitted that he mistakenly charged the plaintiff with public intoxication because Mr. Ratliff was clearly on his private property on the night of April 18th.

In their motion and supporting memorandum, the defendants do not provide a qualified immunity analysis for false arrest.[1] The burden is theirs alone. I am not obligated to discharge it for them.

In any event, I **FIND** that any mistaken belief that Deputy Shackelford had probable cause to arrest was objectively unreasonable. The facts presented by Mr. Ratliff fail to justify any mistaken belief that he "ha[d] committed, [was] committing, or [was] about to commit an offense" of obstruction when Deputy Shackelford made the arrest. *Wilson v. Kittoe*, 337 F.3d 392, 398-99 (4th Cir. 2003). Mr. Ratliff was standing five feet away and merely requested, once again, that Deputy Shackelford leave his private property. Although Mr. Ratliff flailed upon being handcuffed, as I explain above, Deputy Shackelford lacked authority to use force under these circumstances in the first place. Although the Fourth Circuit has noted that "great deference" should be given to a magistrate's finding of probable cause to issue a search warrant, *U.S. v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990), the Magistrate Judge's *post-hoc* determination that probable cause existed here does not control my decision. Deputy Shackelford's mistake in

---

[1] In their memorandum in support, the defendants include an ending section that discusses whether Deputy Shackelford had probable cause to enter Mr. Ratliff's home. However, this section is in no way specific to whether Deputy Shackelford is protected by qualified immunity on Mr. Ratliff's federal false arrest claim. Also, the defendants included this section merely in anticipation of what the plaintiff may argue.

assessing probable cause was not objectively reasonable in light of the situation.

Moreover, I **FIND** that any reasonable officer in Deputy Shackelford's position would know that he or she lacked probable cause to make an arrest. Mr. Ratliff asked Deputy Shackelford to leave his property. Mr. Ratliff made no aggressive move toward the deputy. He was, in fact, no less than five feet away in making this request. Any reasonable officer would know that it was unlawful to arrest an individual in Mr. Ratliff's position. Deputy Shackelford would have been "able to walk around [Mr. Ratliff] without difficulty." *Willingham v. Crooke*, 40 Fed. Appx. 850, 852 (4th Cir. July 22, 2002) (unpublished) (discussing *Rogers v. Pendleton*, 249 F.3d 279 (4th Cir. 2001)).

Therefore, I **DENY** the defendants' motion with respect to this issue. Deputy Shackelford is not protected by qualified immunity for the plaintiff's § 1983 false arrest claim.

### ii. Plaintiff Concedes that the Federal § 1983 Claims Against the Kanawha County Sheriff's Department and Kanawha County Commission Should be Dismissed

Mr. Ratliff concedes that his federal § 1983 claims should be dismissed against the Kanawha County Sheriff's Department and the Kanawha County Commission. (Pl.'s Resp. to Defs.' Mot. for Summ. J. [Docket 32], at 16 ("Plaintiff concedes that the Kanawha County Sheriff's Department and the Kanawha County Commission should be dismissed as to Plaintiff's § 1983 claims because the facts discovered in this case have not shown a governmental custom or policy as the moving force behind the constitutional violations of Defendant Shackelford as required for a § 1983 claim under *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 692-93 (1978).").). Therefore, such aspect of the defendant's motion is **GRANTED**.

### iii. West Virginia Immunity as to Deputy Shackelford, Kanawha County Sheriff's Department, and Kanawha County Commission on State Constitutional Claims

9

Next, the defendants argue that they are immune from the plaintiff's state constitutional claims under West Virginia law. In West Virginia, "[a] public officer is entitled to qualified immunity from civil damages for performance of discretionary functions where: (1) a trial court finds the alleged facts, taken in the light most favorable to the party asserting injury, do not demonstrate that the officer's conduct violated a constitutional right; or (2) a trial court finds that the submissions of the parties could establish the officer's conduct violated a constitutional right but further finds that it would be clear to any reasonable officer that such conduct was lawful in the situation confronted." Syl. pt. 6, *City of Saint Albans v. Botkins*, 719 S.E.2d 863 (W. Va. 2011). This test is noticeably similar to that in *Saucier* and *Pearson*.[2]

> As to their state qualified immunity argument, the defendants merely contend that,
>
> [u]nder both the Federal and West Virginia standards for qualified immunity, the actions of the officer are analyzed under an 'objectively reasonable' standard to determine whether a reasonable, similarly situated officer believed that his conduct violated a clearly established constitutional right. This analysis need not be repeated, and for efficiency's sake, the Defendants hereby incorporate by reference, as if fully set forth herein, the analysis set forth in their arguments for qualified immunity under the federal constitutional claims.

(Defs., J.S. Shackelford's, Kanawha County Sheriff's Department's & Kanawha County

---

[2]     The defendants claim that West Virginia's standard "for police officer qualified immunity is broader" than the federal standard. (Defs., J.S. Shackelford, Kanawha County Sheriff's Department's & Kanawha County Commission's Mem. of Law in Supp. of Their Mot. for Summ. J. [Docket 28], at 16). In support of this contention, the defendants quote the West Virginia Supreme Court of Appeals in *Botkins*, saying that "the question to determine entitlement to qualified immunity in the absence of such wrongdoing centers on 'whether an objectively reasonable official, similarly situated to the defendant, could have believed that his conduct did not violate the plaintiff's constitutional rights, in light of clearly established law and the information possessed by the defendant at the time of the allegedly wrongful conduct[.]" *Botkins*, 719 S.E.2d at 868-69.

        However, upon reading this sentence in context, I find that the *Botkins* Court was not setting forth West Virginia's qualified immunity standard in making this statement, but was instead referring to its prior formulation of its qualified immunity test in *Hutchison v. City of Huntington*, 479 S.E.2d 649 (1996), a case decided before *Saucier*. The Court later holds that the standard for qualified immunity is the two-part test that I note above, explaining that *Saucier* "keep[s] with the guidance the Court previously provided in *Hutchison*." *See Botkins*, 719 S.E.2d at 870. In any event, Deputy Shackelford's conduct is so clearly outside the bounds of constitutional jurisprudence that he is not immune from suit.

Commission's Mem. of Law in Supp. of Their Mot. for Summ. J. [Docket 28], at 16). Thus, having already analyzed those arguments above, I **DENY** the defendants' motion with respect to their state qualified immunity claims.

Therefore, in sum, the defendants' Motion for Summary Judgment [Docket 27] is **GRANTED in part**, as to the federal § 1983 claims against the Kanawha County Sheriff's Department and the Kanawha County Commission, and **DENIED in part**, as to all other claims.

## III. Plaintiff's Motion for Partial Summary Judgment [Docket 29]

The plaintiff's Motion for Partial Summary Judgment [Docket 29] is **DENIED**.

## IV. Conclusion

For the reasons explained above, the defendant's Motion for Summary Judgment [Docket 27] is **GRANTED in part**, as to the federal § 1983 claims against the Kanawha County Sheriff's Department and the Kanawha County Commission, and **DENIED in part**, as to all other claims. The plaintiff's Motion for Partial Summary Judgment [Docket 29] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      May 21, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE